The fourth district appellate court of the state of Illinois has now convened the honorable John W. Turner presiding. Thank you and good morning. Good morning your honor. We are here on case number 4-221111 that's Talicia Banks versus the city of Rockford. For the appellate Mr. Craig Sandberg is appearing and for the appellee Mr. Michael Atkus. Mr. Sandberg would you please proceed with your argument? Thank you your honor. May it please the court counsel. We're here to talk about a motion for summary judgment that was granted by the trial court in Winnebago County. It is the appellant's position that the trial court erred when it granted summary judgment in favor of the city of Rockford and against the plaintiff when it substituted its judgment instead of a jury's judgment as to the credibility of the witnesses. The case involves a motor vehicle accident that took place on November 5, 2017. The facts in this case are not in dispute. There is post-event information that we have as well as information that was collected during the event as well as one witness who observed the event. There's a traffic stop that took place that related to motor vehicle tags officer Jamie Cox who was a I think he was on the force less than a year with the city of Rockford at the time effectuated that motor vehicle stop. Eddie Patterson was in a pickup truck at the time he had been pulled over when the when the stop took place based on some of the information from the city of Rockford and it appears that a license was given that wasn't Eddie Patterson's it was for Mr. Turner Carl Thurman I'm sorry and then at some point in time and this is when Frank Luando who is the sole witness his testimony testimony becomes relevant officer Cox is at the door of Mr. Patterson's truck. He doesn't see the door being opened but he does see the door when it is opened at some point in time that vehicle then takes off Mr. Patterson's vehicle we'll call it prematurely leaving from the traffic stop or any other reason as that vehicle is going away Mr. Luando observes officer Cox move with that vehicle. He doesn't know he doesn't see officer Cox grabbing on to anything he doesn't see officer Cox being hung up or dragged on that he just sees it coming along they sees officer Cox moving along with the vehicle. What we know from reconstruction information later is that Mr. Patterson's vehicle traveled northbound on that street. He was shot twice by officer Cox while he was in the cab of the vehicle presumably that would have disabled him Mr. Patterson's truck then hit a tree that was at the church at the end of the street. There was a lot of wreckage from that that truck and officer Cox was dislodged from that vehicle and he too sustained injuries that led to his death. In the trial court excuse me good morning I'd like to interrupt and focus for a minute on one of the issues here the main issue really is willful and wanton and your summary of the facts really I think toward the fact or the point that there really aren't too many facts that are known here because of the circumstances of that event. However with respect to officer Cox being either attached to or moving with the vehicle once it began moving. The only fact we really have or one of the key facts is the defendant running and that is probably the only specific information we have. However is that not consistent not only with perhaps his action in not moving away from the vehicle per training guidelines and we heard we saw in the record testimony of one of the officers with respect to that but also consistent with either unskillfulness fear for safety and negligence in his being attached to that truck and in that circumstance how can we draw any specific inferences that his conduct was willful and wanton. I appreciate that so you're correct other than Mr. Lawando's testimony about observing Mr. Cox moving along with the vehicle we do have the audio call of saying he's running. I think that a jury would be able to infer from that and and if you listen to the audio it sounds like it sounds like officer Cox is moving or is being moved or something it's not it's not as though he's standing still at the time and I think that a jury might be able to piece those two pieces together of seeing him going along with the vehicle and also hearing him call in his running which would suggest that he is moving with the vehicle with the intention of getting with the vehicle staying with the vehicle and that would be that would be reckless that would be when we talk about willful and wanton there's the intentional aspect of the non-intentional aspect of it and I think that the courts have frequently characterized it as reckless and I refer to it however the court wants me to but we could talk about it in the showing an utter indifference or conscious disregard for the safety of himself or others is that reckless is is what would chasing after the what's that does utter indifference equal reckless I think that there is case law out there that suggests that they are synonymous they they're in between that intentional aspect and the in the the negligent aspect but I I'm happy to use the language specifically from from the tort immunity act in its definition of willful one conduct but I think that running after a vehicle in order to chase down someone who's just prematurely leaving that traffic stop for whatever reason would show a conscious disregard for the safety of himself and others or utter disregard for the for the safety of himself and others um but to to uh justice xenoph's point I think that that audio of he's running that gives us some insight into and it's the only insight we have into what was going on with officer cox let me stop you there you seem to be interpreting he's running with i'm running and I don't think that's a reasonable interpretation is it um suggesting that the officer was running because he is running is not the same as I am running you agree with that I would oh absolutely sure um I but I think that what what he's running is demonstrating is that the vehicle is moving because there he was never outside of the vehicle we know he wasn't actually on foot and running uh but it is it is because of the the audio aspect of it and you hear the movement that is indicating and and it would provide an explanation for what officer cox was doing when eddie patterson was moving away and I and I think that a jury could that officer cox was disregarding his training uh that we have lieutenant gibbons talking about that you're supposed to open up that space and let the vehicle go and that's not per se willful unwanted oh I I absolutely I it is it it can be used as evidence of willful one conduct it is not per right absolutely but but we still I know I'm interrupting here but that's okay he he is we do not know his frame of mind his intention we know he was attached to that truck somehow but we don't know that's the key that's missing here and that supports the trial court's um granting of the motion to reconsider I mean she elaborated specifically about the lack of evidence with the court is saying but the court also found that it could be interpreted as willful and one conduct and and to your point about that that um as far as the insight into what officer cox was specifically talking about I've tried cases and and have won cases at trial in the in the explanation that's given by the officer is at odds with the evidence and the jury just doesn't that they that they shot in fear of their life because if they had done that that would have been self-defense as a complete defense and that would that would have resulted in a defense verdict but they didn't believe them even though that's the insight that they gave so in this particular case we know factually what was going on that he was attached to the vehicle in some fashion and we know that there that there was officer cox indicating an observation of he's running and I think that the jury can can surmise using their own common experiences when they hear about he's running and seeing and having somebody observe the individual officer going with the vehicle that they could reach the conclusion that officer cox was acting recklessly when he attached himself to the vehicle if that's what wait wait wait you said attached himself we don't know how he got attached there is no evidence the witness the only witness we have didn't get that information that isn't part of the record as far as I know so maybe I've missed something no I I understand what you're saying but but officer cox what he says he's running isn't saying I'm attached to the vehicle I'm stuck I'm hung up I'm getting dragged anything like that and so I think that the jury can look at what Mr. Lawanda has testified to about what his observations are and in listening to what officer cox's own words were that he's running and reach a conclusion based on their their listening to the evidence and their conclusions about what that evidence suggests to them that that is demonstrative of officer cox acting in a way that I I just I explained to me why that isn't pure speculation versus a reasonable inference and I understand that's kind of a hard concept when do we go for reasonable inference of pure speculation because it seems to me that's your problem here that your argument kind of does that but I'd like to hear from you why it does not in your view yeah well in in going to my example that I use with Justice Zinoff that in other cases where an officer has testified that I was in fear of my own safety or the safety of others and that's why I shot somebody that's the that's the only evidence into the insight that the officer had was was sharing with the jury and yet the jury despite hearing that from the officer's own testimony doesn't believe that so there so in that case the jury is reading the evidence differently than the way the officer wants them to believe it so in this particular case a jury can look at and listen to Mr. Lawanda's testimony about what he observed and it wasn't he doesn't characterize anything as frantically kicking his legs or anything like that and listening to the audio of he's running and hearing the audio and the way it is and whether or not there's panic or not panic in Officer Cox's voice or however they choose to do that I'm sorry oh I heard something in the audio you just the just the technology so go ahead yeah and and but it's for the jury to decide how they're interpreting that particular information it it isn't so one-sided that it could only be not willful and wanton and only negligence and mere inverts or anything like that that's not the case there is sufficient information and evidence in evidence in this case that would allow a jury to not speculate but to use their reasonable inferences from the evidence that's available to them and the conclusions and based on their own experiences and common sense to conclude that Officer Cox when he called and he's running and then is observed moving along with the vehicle however however he did that whether it was attached by hand or holding on or there there isn't any evidence that he was hung up or got caught or anything like that and the jury could fairly conclude and it wouldn't be ranked speculation that he was acting willful and wantonly well we don't know from the evidence that he wasn't caught up that that it didn't on his clothing I mean the witness didn't tell us that there is no evidence about that so so that would if he were that would certainly contribute to an inference of unskillfulness you know in artfulness inability to separate himself from the vehicle per the training he got so we don't really know that do we well your point is well taken justice there is no evidence that the city has elicited to suggest or argue or opinions that are going to be offered that Officer Cox was caught on that vehicle or was hung up on that vehicle there would be some type of evidence there may be tears in his uniform there may be scratches in his body there may be anything like that that could be supported and in the absence of that that would be ranked speculation to argue that he was caught and we're not I mean there may be no tears in his clothing I mean it's just as Turner said I'm I'm having trouble with the line between an inference and speculation here I I'm having the same difficulty as Justice Turner obviously uh I I um I hear you I I'm not sure I I agree with you I think in this particular case given the evidence it wouldn't be ranked speculation for them to reach that conclusion it would be the inferences that they reach summary judgment is only supposed to be granted when it can't be an a different outcome can't be reached where there's it's only leading to one conclusion in this particular case that's just not the circumstance there are and I and I've argued in my brief both in the opening brief as well as the the reply there are multiple ways that a jury could and multiple ways that both myself and the city can argue the case and the and it's left to the jury to make a decision on what they find to be the case counsel um in looking at this record the thing that kind of surprised me struck me as odd if you will is that the record doesn't have an autopsy regarding the officer how did the officer die and wouldn't that possibly be um helpful for the trier of fact and for us and as a reviewing court to to know what the cause of death of the officer was and why isn't that in the record yeah so um if you remember my question could you pick up sure you're asking about the the autopsy so uh officer cox is not a party to the lawsuit and um neither myself nor the city uh opted to put his health or the autopsy uh as part of the record maybe that's a a hippo related issue i'm not sure that it's particularly germane to the issues of this particular case uh i will tell you just so you know what ended up happening is a closed head injury because after the vehicle struck the the tree he was thrown from that vehicle um and that's where that's how his injuries were sustained does that answer yeah i don't want you to uh reveal something that's not in the record but as far as the record shows i think it was just that the officer uh was found about 20 feet from the vehicle or where the vehicle crashed so that's really what we know yeah and i appreciate that so that's where his body was found and then he was later transported to a hospital and passed away from close head injury okay i mean obviously that's a that's a short form of the autopsy the autopsy is been referring to an audio um of what the um uh officer said but is the audio in the record i believe that the audio is in the record okay um you have you still have a couple minutes left okay uh the the other thing i i want to to point out your honor is that this is a as it relates to the willful one conduct that the itself as well as uh there was willful unwanted conduct and shooting eddie patterson twice in the vehicle um you know the the position on that that the plaintiff takes in that is that the officer climbing into or onto the car created the condition and so officer cox if if the reason and we don't know why he shot eddie patterson but if the reason was um in order to stop the vehicle that he was climbing into with his with his service revolver and then discharged it into eddie's body twice uh that was willful one and that was showing a utter uh conscious disregard for his safety and the safety of others for anybody that was on the road that that when officer cox was disabling the person who was in control of that vehicle um that was willful one as well so i wanted to make sure that uh that was not waived although it was suggested it was waived by the uh by the appellee and their response brief it was never waived it has always been part of the plaintiff's position that this is a two-part circumstance so go ahead justice was that argued thank you was that argued in the trial court however uh understanding that this was raised for the first time on appeal and i and i think i addressed that in the reply brief uh that it wasn't ever waived that it was always addressed uh it was not as um the the city hadn't attacked that in the in the original uh summary judgment briefs uh the the city's position was that there wasn't evidence of willful one conduct and there wasn't evidence that officer cox just intentionally discharged his weapon and so that was kind of the first go around uh and then as it related to the the um the motion for reconsideration of that summary judgment the primary argument that the city was then waving is that the court uh chose the wrong definition for willful and wanton and i i don't even think that in its uh in its order related to the motion for reconsideration the court said yes i used the wrong definition of willful and wanton had i used the right definition it would have been a denial it i think that in this particular case the reconsideration was just a redo by the city of the first motion as opposed to the way it was if it were a true reconsideration but in any event as it relates to the issue of our position on uh the willful wanton shooting of eddie patterson that was never waived and i addressed that in my reply brief thank you so unless the court has any other questions i i'll defer to the city at this time you will have rebuttal mr at this please proceed with your argument thank you good morning i'm sorry i think i heard one of those technical noises good morning michael atkiss may it please the court michael atkiss i'm here this morning on behalf of the defendant i believe the city of rockford to ask this court to affirm the well reasoned judgment of judge fabiano in the trial court uh granting summary judgment in the city's favor the issue in this case is is straightforward it's easy to describe uh it's whether there's evidence in the record from which a reasonable juror could conclude that officer cox acted willfully and wantonly as defined by the tort immunity act during his traffic stop of the decedent so so counsel explain please for us why the trial court did not move beyond its position as gatekeeper um and deny the plaintiff right to a jury trial when it held there was no evidence in the record from which a jury could conclude that officer cox uh was guilty of willful and wanton conduct when he held on to uh this vehicle as it was moving um cut right to the chase judge i appreciate that um there's no evidence to show and i think as as your honor had questioned counsel about there's no evidence to show why even if we infer that the the officer cox's grab of the car was intentional there's no evidence to infer why the car was he thinks it's a reasonable inference from the the comment made over the radio that he's running um i think fairly the only inference that can be drawn from there is that officer cox was describing what he saw i i'm not sure how much more you could infer from this simple statement of he's running other than um officer cox was observing the plaintiff trying to leave a traffic stop and presumably was trying to alert other officers of that fact um well well i'll let me ask this question because the question seems to be whether or not a jury could infer that from the facts that are present these two facts does the jury have an ability to take those two facts and say it's plausible that uh officer cox was running well i think there's and i i think the way you you phrase that uh judge kind of betrays the the issue um whether it's plausible um and and whether a jury could reasonably infer that based on the evidence is two separate issues um a plausibility standard is a is a motion to dismiss standard um a at summary judgment the plaintiff needs to come forth with evidence to show that officer cox's conduct not maybe was willful and wanton or could have been willful and wanton depending on a myriad of things that may have happened that none of us can say because primarily because unfortunately both parties to the traffic stop are deceased but he has to come forth with evidence that shows it's willful and wanton correct but this seems to be an argument pieced together circumstantially to say these two pieces of evidence mean that potentially it could have occurred this way and therefore there's an inference that the jury could follow that seems to be the argument it just and and again this raises the what's probably what you know of the hardest questions in law that i think we've already identified this morning is is where do you draw the line between um what's speculation and what's a reasonable inference and there's frankly no real way to define that sort of uh line drawing it's judicial line drawing that we have to base on what on precedent and what other courts have done before and um you know it it me a bit of i think it was what justice potter said about pornography was i can't say what it is but i know when i see it so i think in a case where there's where there's evidence um that's recognizable for instance in the the hypothetical that council discussed this morning about um a shooting where an officer would come in and explain why he shot but the jury would be free to disbelieve his you know his testimony but in order in order for that to be sustainable or survive emotion there would have to be other evidence presumably in that case there'd be some evidence whether it be physical evidence eyewitness testimony from someone else photographs video um some other physical evidence um that the plaintiff could rely on in order to prove a willful and wanton act and and and that's what's missing here from the simple bits of going with the car and he's running um we don't know even if we assume is the district or the district court but trial court did that the grab of the car he grabbed the car rather than um was dragged we don't know if it was an intentional grab we don't know if it was a momentary unconscious reaction we don't know if it was an inadvertent um unskillful act and i'm not saying and i want to be clear here i'm not saying that this is a case where the evidence could only amount to negligence um and plaintiff can't prove uh conduct beyond negligence i'm saying in this case there is no evidence either way there's no evidence to show uh to reasonably support a consciously disregarded safety or that it was utterly indifferent i think what the court needs to bear in mind at least when it's trying to make the distinction between what's reasonable inference and what's um speculation in this case is that uh willful and wanton at least as it's defined by the i guess mens rea um excuse me where there needs to be some evidence of um the reason for the officer's conduct and and why it was done now that could come from an officer can in this case uh frankly in most cases that i've seen involving officer misconduct it comes from um the victim of that misconduct who gives a different story than the officer of what factually happened and the plaintiff's version of the facts can't you know don't jive with the officer so there's a question of facts for the jury about who are who are we going to believe um but here unfortunately we don't have officer cox's side of the story we don't have um the decedent side of the story we don't have any video we don't have any uh photographs uh we don't have any eyewitnesses other than what someone saw from across the street and certainly wasn't able to that could provide some explanation one way or another about what was going on in that car and you know and whether officer cox's actions could rise to the level of you know conscious disregard or utter indifference for safety i just think um ultimately it's it's a it's a burden of it's not the um defendant's burden to come forth with evidence to show um you know oh well these these tears in the shirt show that it could have only been negligence that's it's the plaintiff's burden of proof to prove his case and on summary judgment to show that he has evidence to prove his case and i just think the record is too silent on what happened oh i'm sorry justice turner is that yeah it is i'm sorry you're just a little bit quieter than everyone else yeah i think i think i had that problem last time i'll try to correct it uh not right now but later on but here's my question um with these undisputed facts um why isn't it a good argument for plaintiff to say that this is the perfect case that goes to the jury because most case law says that juries decide or fact finders decide what is or is not willful and wanton conduct jurors decide what's willful and wanton conduct is the case law says when there's evidence to support that claim when there's a baseline level of the cases are clear on that and summary judgments are granted and willful and wanton cases regularly there's plenty of reported cases finding that there simply wasn't enough evidence to sustain that or to go to a jury here there's just no there's not there's no facts of what happened you know it's an unfortunate situation where um you know where you understand plaintiff's for the truth here to find out how their father died but there's there's no one to really provide any meaningful insight and i think all a jury would have to go on in this case other than you know a couple random facts that don't piece together too much um is frankly their their think of police and what they think of people who get stopped by police and i i think it's fair to say that um people tend to have strong feelings on on both of those issues and either way and i think in a case like this it's especially dangerous um to let a case go to jury with such little facts um you know with with such a um i hate to say it but a politically charged issue you're putting before the jury with with almost no evidence did i answer your question yeah you did thank you you have more time if you need it you know just if um i guess i i just like to make a a few points about um some of the case law that the council cited in his brief um specifically the robles versus city of chicago case um and i think what's important to distinguish that case from this one is in in that case and i'm i'm reading a quote directly from the case the the court noted that conflicts between the testimony of the officers and potential conflicts with the physical evidence leave unresolved issues that could support a finding of willful and wanton so this was a shooting case um this was a a shooting case where um the the the officers testified that they were in fear for their life reasonable fear for their lives and the lives of others when they shot the decedent um but the difference in that case is there was physical evidence which contradicted that which contradicted that evidence there was physical evidence to show that and i and i i may be wrong on the granular details but i believe it was that the decedent was shot in the back so from a shot in the back it's a reasonable inference for someone to draw that at that moment the shot was fired the officers weren't in any immediate danger for their lives or the lives of others which would have justified the use of deadly force in that situation but again based on you know not just simply disbelieving an officer's testimony but based on some physical evidence in the record that showed that um officer's story was bunk to put it frankly um the other case uh council sites that i want to discuss briefly was the swanski versus village of lombard case which was a a vehicle a vehicle pursuit case where the where the uh the officer in question was chasing the suspect in his own squad car and and there the evidence that supported a a willful and want willful and wanton claim going to the jury was um a six and a half mile pursuit the duration of the suit being over eight minutes and the fact that there was a near collision in an actual collision that had occurred during this pursuit prior to the collision which gave rise to the suit so in other words there is evidence that the officer engaged like the tort immunity act said in a course of action over minutes in which he had seen accidents he had seen dangers he had seen damage and destruction based on what he was doing but he evidenced by continuing the chase that he consciously decided to uh disregard those dangers that he had seen happen and continue to uh chase the the suspect so i i think that's clearly distinguishable on the facts in this case um finally council mentions a a case in his brief um which i think he calls dudley versus city of chicago the appellate court calls it givens i think there was two plaintiffs um and there's in my reading of that case there's nothing that analyzes sufficiency of evidence on a willful and wanton claim so i i frankly don't see how it's relevant in this case the issue in that case seemed to be um whether a a special interrogatory given to a jury um contradicted a general verdict and whether the form of the general interrogatory was proper um so i really think that that's kind of that case is a bit of a red herring or a non-starter as far as um counseling in favor of a compelling reversal in this case i think i've um i think i i've covered what i want if if um the justices don't have any other questions i will um i will end conclude by um asking you to affirm the um circuit court's opinion granting summary judgment in the city's favor and thanking you for your time and attention on this matter this morning i see no questions thank you for your argument mr sandberg do you uh conceded that there are multiple different ways that a finder of fact could look at this evidence they could see it as negligent or they could see it as something other than negligence which would include willful and wanton conduct um he admitted to the possibility of that later in the argument he talks about that there's a couple of random facts these aren't random facts this is evidence the evidence is what mr lawando observed the evidence is what officer cox called into and the evidence is the autopsy showing that uh mr patterson had been shot twice he was there's a gunshot wound to the left chest and i think one of the cases that um the council had talked about was the robles case versus city of chicago where someone had been shot in the back mr patterson was also shot in the upper back there's evidence from autopsy of that um later after using the term couple random facts despite the observations the call in the autopsy he talks about that this is the wrong kind of case in this politically charged environment that's not a reason to affirm a summary judgment there is a question of material fact as to whether the actions of officer cox on behalf of the city of rockford constituted willful and wanton conduct a trial judge is confronted with jurors and their biases all the time and it is incumbent upon a trial judge to weed out those people who are predisposed to finding and bringing in a position one way or the other saying that i i support all cops or i support all african-american people there there is the possibility of getting a fair-minded juror to hear these cases um but affirming a summary judgment motion where there is supposed to be no other way to look at the facts would be um the wrong thing to do in this case because there is by the city's own admission other ways other than negligence that these facts can be thought of characterized inferences drawn um and that's for the jury that's the province of the opening uh comments to the court the role of the finder of fact finder of facts was usurped by the trial judges granting of the summary judgment on behalf of the city the trial court correctly held in the first instance when the summary judgment motion was originally denied when when uh judge fabiano found that there were questions of material fact that precluded the granting of jury to decide whether or not the acts and or omissions of officer cox constituted willful wrong conduct um now so let me ask it this way yeah clearly questions of material fact but doesn't this case lack potential answers i know that's a hard way of sort of answering a question but well and the jury's going to have to guess that they may accept your skillful argument and guess i guess i'm looking for more inferences that somehow the officer was running shouldn't have been running something more well i i think that as i as i had indicated earlier i think that the audio uh and the transcription of saying he's running it it is demonstrative of what officer cox was observing and it provides an explanation for what he did in response to that vehicle running which is what mr luando saw which is that he went with the vehicle held on to grabbed on to did something it isn't so clear in this case that this court nor the trial court can say there is no way a finder of fact could ever say that what mr luando saw and what officer cox uh called in and what the autopsy showed that there was never a chance that there was willful unwanted conduct on behalf of the city of rockford it's just not possible um the idea that um mr sandberg i want to ask a question before you run out of time um it appears to me that the eyewitness also said that the officer was quote um in trouble or danger in quote and that the officer may have been quote tangled up in quote with the truck you agree that that is also in the evidence i i i will yeah judge i i just i will agree that there were mr lawando's testimony if if it's all looked at it was all over the place and you know because obviously you know the city's council is trying to elicit certain things and i'm trying to elicit certain things and i think at the end of the day a jury should be able to hear mr lawando's testimony in total about what he observed or what he thinks he observed or or how he chose to characterize it because remember a lot of these questions are are the the way that you know trial attorneys ask them is intended to elicit certain things so i would agree that mr lawando's testimony has lots of different shades some more favorable to the plaintiff's version some more favorable to the defendant's version and that's great because that gives argument on both sides that's available but it doesn't feed into the idea that there isn't any other way uh or there that there's no way a jury could conclude that this is willful and conduct council also talked about um also yeah you are out of time okay we appreciate both of your arguments and the court will at this point take the matter under advisement the case is submitted and we now stand in recess